**SHELTON v. JONES.**

No. 7951—Opinion Filed July 10, 1917.

Rehearing Denied Sept. 18, 1917.

(167 Pac. 458.)

**1. Conversion—Requisites—Possession.**

In order for the plaintiff to recover in an action of trover, it is necessary for him to allege and prove that he was entitled to the possession of the converted property at the time of its conversion.

**2. Fixtures — Real or Personal Property—Presumption—Building.**

The law presumes that a building erected upon a tract of land is a part of the land it occupies, and therefore real property. This presumption may, however, be rebutted by showing that the building, in fact, was personal property, and not a part of the realty.

**3. Conversion—Building—Recovery.**

In an action of trover for the conversion of a building situated upon a tract of land, it is necessary to specifically aver a state of facts that will clearly show that such building is personal property, and that the plaintiff has the right to maintain said action.

**4. Fixtures—Building—Landlord and Tenant—Special Agreement.**

The rules of law as to the character of property affixed to the land of another and the right to remove the same, laid down in section 6749, Rev. Laws 1910, have no application where there is a special agreement between landlord and tenant as to the character of property affixed to the demised premises or as to the right of removal.

**5. Same—Realty or Personalty— Special Agreement.**

When by special agreement between landlord and tenant a building erected upon the demised premises may be removed by the tenant at the expiration of the lease provided the rents for the whole time specified in the lease have been paid, the character of such building is fixed thereby as personal property, subject to become a part of the realty upon breach of the conditions attached to its removal, and, if such character continues with the building under a new lease which makes no reference to the building or its removal, and such building continues personal property during the term of the new lease, the conditions also continue, and it is subject to become a part of the realty upon failure to remove the same at the expiration of the new term or upon failure to pay the rents accrued and accruing under said lease.

**6. Conversion — Sufficiency of Petition — Possession of Building.**

A petition in an action of trover for conversion of a building erected upon the lands of the lessor, under an agreement that the same may be removed by the lease at the expiration of the lease, provided the rents specified in the lease have been paid, which fails to allege that the rents accrued or accruing under said lease have been paid or tendered to the landlord, does not state facts showing that the plaintiff is entitled to the possession of said building and fails to state a cause of action.

**7. Appeal and Error—Insufficiency of Petition—Cure by Instruction.**

A failure to aver payment or tender of rents in an action of trover for the conversion of a building erected under an agreement as stated above on the land of another is not cured by an instruction directing the jury, if they find for the plaintiff, to deduct from the value they find the building to have the amount due the landlord for rents.

(Syllabus by Rummons, C.)

Error from District Court, Comanche County; Cham Jones, Judge.

Action by J. P. Jones against F. W. Shelton. Judgment for plaintiff, and defendant brings error. Reversed and remanded, with instructions.

On November 5, 1912, the plaintiff in error, hereinafter called the defendant, being the owner of a lot in the city of Lawton, Comanche county, entered into a lease with Marshall A. Tucker and C. S. Powell, partners doing business under the firm name of Tucker & Powell, whereby he let said lot to

said Tucker & Powell for a term expiring January 1, 1908. The lease contained the following provisions:

"The said Shelton also agrees that the sai.. parties of the second part shall have the privilege at the expiration of this lease to move off of said lot any building which they, the said parties have caused to be placed thereon, provided that the rent for the whole time as specified in this lease has been paid."

Tucker & Powell entered into possession of said lot under this lease and erected thereon a two-story building which is here in controversy. Before the expiration of said lease Tucker acquired the interest of Powell in the lease and building. After the expiration of this lease Tucker remained in possession of the lot while negotiations for a new lease were pending between him and the defendant. Finally Tucker instituted suit in the district court of Comanche county against the defendant to compel specific performance by the defendant of an agreement to lease the lot to him. Tucker had judgment against the defendant decreeing specific preformance of the agreement to lease. The decree of specific performance is as follows:

"The said W. F. Shelton ought to be required to make, execute, and deliver to the said M. A. Tucker a good and sufficient lease in writing whereby he shall lease to the said M. A. Tucker lot 1 in block 49 in the city of Lawton, Comanche county, Okla. for a period of five years from and after April 8, A. D. 1908; said lease to be conditioned as follows: That the said M. A. Tucker shall pay to the said F. W. Shelton one hundred dollars ($100,00) per month, payable monthly in advance at Tucson, Ariz., and the said M. A. Tucker shall pay all the taxes and expenses in connection with the said lot and the building thereon from the 1st day of January, 1908, until the expiration of said lease, excepting that the said M. A. Tucker shall not pay for the paving of the streets outside from the sidewalk nor for the foundation of the building at the north end and the east side of said lot, and that in the event the building or buildings on said lot shall be destroyed at any time during the term of said lease the said M. A. Tucker shall have the option to quit said lot and surrender up possession thereon on the date of destruction of said building or buildings. Said lease shall be signed by F. W. Shelton and made, executed, and delivered to the said M. A. Tucker before the 15th day of September, 1911."

The decree further provides that, in the event the defendant fails, neglects, or refuses to execute the lease as therein decreed, the decree shall stand as a lease with the same force and effect as though properly executed by the said defendant. This decree became final, and under it Tucker retained possession of said lot to July 12, 1912, when he executed to the defendant in error, hereinafter called the plaintiff, a chattel mortgage conveying the two-story building erected by Tucker & Powell upon said lot to secure the payment of a note for $2,000 bearing date October 1, 1911, payable one year after date. On July 20, 1921, Tucker executed and delivered a bill of sale conveying said building to J. A. Harrold. On June 6, Tucker being in arrears in the payment of rent in the sum of more than $1,800, the defendant served on him a notice in writing terminating his tenancy of said lot on June 16, 1912, for nonpayment of rent. Thereafter the defendant commenced in a justice of the peace court an action of forcible detainer against Tucker for restitution of said lot. While this suit was pending the mortgage to plaintiff was executed. The defendant had judgment of restitution in the justice of the peace court on July 20, 1912, which became final. A writ of restitution was issued, and a constable took charge of the premises thereunder. Shortly after midnight on the Saturday following the judgment of restitution, Harrold and some employes commenced removing the windows and doors from the building, and continued during the night and part of Monday, until they were dirven from the primses by the defendant. Plaintiff appeared and made demand on defendant claiming the right to possession under his mortgage, which demand was by the defendant refused.

Plaintiff brings this action, seeking to recover from the defendant the sum of $2,400, and interest, for the conversion of said building. Plaintiff alleges in his petition the execution by defendant of the lease to Tucker & Powell, and alleges that all rents due under the term of said lease have been paid. The petition further alleges the suit against defendant by Tucker for specific performance, and sets up and makes a part thereof the decree of the district court in said action The petition further alleges and sets up the execution of the note and chattel mortgage made by Tucker to the plaintiff, and alleges that by reason of the acts of Harrold in removing the windows and doors from said building that the plaintiff deems himself insecure, and the conditions of said mortgage were broken, and he was entitled to foreclose the same. The petition alleges the value of the interest of plaintiff in said building to be $2,400 and interest, and alleges the value of the building to be $3,500. It is alleged that plaintiff on July 22, 1912, was entitled to immediate possession of said building because

of conditions broken in his said chattel mortgage; that on said day the defendant by force and arms took possession of the said building, and has since held the same, and has converted the same to his own use and benefit, notwithstanding that demand for the possession thereof has been made upon him by plaintiff. The petition further alleges the execution and delivery to J. A. Harrold of a bill of sale by M. A. Tucker conveying said building to Harrold, and alleges that Harrold took possession of said building, as he had a right to do, and that the defendant by force and threats drove said Harrold from said building, denied said Harrold his right, title, and interest in and to said building, that at this time said Harrold is the owner and entitled to the possession of said building subject to the rights of the plaintiff under his mortgage, and that the defendant has made it impossible for anybody to remove said building from the said lot, though said Harrold, owner of the same, made effort to do so. It is then alleged that said building was put upon said lot and remained under the understanding and conditions set out in the petition, and that it was put there for the use of said Tucker in his business as a merchant and druggist, and that it was at all times trade fixtures put on and built for the use and purposes of trade by said Tucker.

To this petition the defendant demurred. The demurrer was overruled by the court, defendant saving an exception. Defendant then answered, and the plaintiff replied thereto. At the trial the defendant objected to the introduction of any evidence because the petition failed to state a cause of action, which objection was overruled, and exceptions saved by the defendant to such ruling. At the conclusion of the evidence of plaintiff defendant demurred thereto, which demurrer was overruled, and exceptions saved. At the conclusion of the evidence the defendant moved for an instructed verdict, which motion was overruled, and exceptions saved. The jury on September 17. 1915, returned a verdict for the plaintiff in the sum of $2,600, upon which the court entered judgment in favor of the plaintiff in the sum of $2,600. with interest at 6 per cent. per annum from July 20, 1912. The defendant unsuccessfully moved for a new trial. saved exceptions to the overruling of his motion, and brings error.

R. J. Ray, for plaintiff in error.

B. M. Parmenter, for defendant in error.

Opinion by RUMMONS, C. (after stating the facts as above). The first assignment of error urged in the brief of the defendant, and the only one necessary to be considered, complains of the overruling of his demurrer to the petition of the plaintiff, and in support of this assignment it is urged by defendant that the petition does not show that the plaintiff was entitled to the possession of the building the value of which is sought to be recovered at the time of the alleged conversion by the defendant.

In order for the plaintiff to recover in an action of trover, it is necessary for him to allege and prove that he was entitled to the possession of the converted property at the time of its conversion. Aylesbury Mer. Co. v. Fitch, 22 Okla. 475, 99 Pac. 1089, 23 L. R. A. (N. S.) 573; Phelps, Dodge & Palmer Co. v. Halsell-Frazier Co., 11 Okla. 1, 65 Pac. 340; Bank of Commerce v. Gaskill, 44 Okla. 728, 145 Pac. 1131; McCracken v. Cline, 55 Okla. 37, 154 Pac. 1174. It is further urged on behalf of defendant that the allegations of the petition are not sufficient to show that there were reasonable grounds for the plaintiff to deem himself insecure, and therefore declare the conditions of the mortgage broken and take possession of the property. We think, perhaps, that this objection is not well taken, as the petition contains allegations showing that the building was being torn to pieces at the time plaintiff appeared upon the ground.

There is, however, a more serious objection to the sufficiency of the petition. The law presumes that a building located upon a tract of land is a part of the land it occupies, and is therefore real property. This presumption may, however, be rebutted by showing that the building, in fact, was personal property, and not part of the realty.

In an action in trover for the conversion of a building situated upon a tract of land, it is necessary that a state of facts should be specifically averred that will clearly show that such building is personal property, and that plaintiff has a right to maintain the action. Bridges v. Thomas, 8 Okla. 620, 58 Pac. 955. It was therefore necessary for the petition of plaintiff to allege a state of facts showing that the building, for the conversion of which damages are sought, at the time of the alleged conversion was in fact personal property, and that plaintiff at the time of such conversion was entitled to the possession thereof.

In the instant case it is alleged that the building was erected by the mortgagor of plaintiff under a lease which provided that such building might be removed at the expiration of the term, provided that the rent for the whole time as specified in that lease

had been paid. It therefore sufficiently appears from the petition that at the time of the erection of the building it was the intention of the lessor and lessee that such building should remain personal property upon certain conditions, and it is alleged in the petition that payment of the rent specified for the full time of the lease had become made. However, this lease had expired more than four years before the plaintiff acquired any rights in said building by virtue of his chattel mortgage. After the expiration of this lease the district court of Comanche county by its decree made a new lease for the parties in which reference is made to the building situated upon said lot, except that the court in its findings of fact finds that the plaintiff therein, Tucker, was the owner of the building situated thereon. Tucker remained in possession of the lot under this lease decreed by the court. There being no provision in this lease with reference to the building on the lot, such right as Tucker had in the building must rest upon the original lease made between Tucker & Powell and the defendant.

We think it is clear that Tucker's right under the lease arising by operation of the decree of the court would be subject to the same condition and limitations with reference to the character of the building on the lot, as to being personalty or realty, as were provided in the original lease. Tucker's right to claim the building as his personal property under the original lease was conditioned upon his removal thereof at the termination of the lease, and also upon his payment of the rents provided for in said lease. While it is alleged that he paid the rents provided for in said lease, it is not alleged that the building was removed therefrom at the termination of the lease, nor was it so removed. Neither is it alleged that the rents accruing under the terms of the lease decreed by the court have been paid or tendered to the defendant. It is alleged in the petition that Tucker had sold and transferred all of his right, title, and interest in the building to one J. A. Harrold, who had gone into open and notorious possession thereof and was attempting to remove it. It therefore appears that Tucker has parted with his interest in said building, and it further appears that he thereby abandoned his lease upon said lot. It is therefore apparent that no attempt was made to remove this building either at the termination of Tucker's tenancy under the first lease or before the termination of his tenancy of the lease decreed by the court. So that the allegation contained in the petition that this building was a trade fixture cannot aid the plaintiff for the reason that

the facts alleged do not bring plaintiff within the exception contained in section 6749, Rev. Laws 1910. Said section is as follows:

"Sec. 6749. When a person affixes his property to the land of another without an agreement permitting him to remove it, the thing affixed belongs to the owner of the land, unless he chooses to require or permit the former to remove it: Provided, that a tenant may remove from the demised premises at any time during the continuance of his term any thing affixed thereto for the purpose of trade, manufacture, ornament or domestic use, if the removal can be effected without injury to the premises, unless the thing has, by the manner in which it is affixed, become an integral part of the premises."

An examination of this section makes it clear that the provisions thereof are not applicable to the facts pleaded in the instant case. In the first place, the building was not affixed to the land of defendant without an agreement permitting its removal, for such agreement is pleaded by the plaintiff.

"A special agreement between landlord and tenant regarding fixtures supersedes the general rules of law regulating their mutual rights and obligations." 11 R. C. L. 1070.

Nor does it appear that the building was removed or attempted to be removed during the term of the lease.

The authorities are not in harmony upon the right of a tenant to remove fixtures erected upon the land of the landlord under an agreement to be permitted to remove, or under the right to remove implied by law, where such tenant has continued in possession under a new lease which makes no reference to his right to remove. The weight of authorities numerically is in favor of the rule that where a tenant who erects fixtures upon real estate during the term of a lease, which he has the right to remove, either by the terms of the lease or by operation of law, before the termination of the lease, enters into a new lease for the same premises without contracting for the right to remove such fixtures he thereby loses the right of removal which he had under the first lease, and such fixtures become a part of the realty. There are a number of well-considered cases which hold to the contrary doctrine and announce the rule to be that the right of removal is not lost because of failure to provide in a new lease for such removal, and that the tenant may remove such fixtures under the provisions which gave him the right of removal in the original lease. For the purpose of determining the instant case we do not deem it necessary to decide which one of these rules we should follow, as, assuming the rule most favorable to the tenant, in the

instant case his right to remove this build-ing must rest upon and be subject to the same conditions that were imposed upon his right or removal under the terms of the first lease. The character of the building was fixed by the terms of this lease. If the ten-ant complied with the two conditions pro-vided therein, it was personalty. Upon a failure to comply therewith it became realty. The character of the building, having been thus fixed, could only be changed by agree-ment between the parties, and no such agree-ment appears.

It seems that counsel for plaintiff in preparing his petition assumed that the only condition imposed upon the right of removal was the payment of the rents accruing under the first lease, and that the right of removal could be claimed under the lease decreed by the court without regard to the obligation of the tenant to pay rent thereunder. We can-not agree with this position of counsel for plaintiff. If the right of removal is to be translated from the first lease into the new lease created by the court, there must also be translated with it the condition for the pay-ment of the rents accrued and accruing un-der the terms of the court-created lease; for we cannot say, because the tenant under the terms of the first lease had a right to remove the building erected by him upon the termination of the lease upon the condition of paying the rents provided for in the lease, that, upon the execution of a new lease which makes no reference to the buildings or their removal, such right of removal continued in the tenant for more than four years after the expiration of the lease which gave it without any corresponding obligation upon the tenant to pay the rents provided for in the second lease.

The tenant, Tucker, could convey by his chattel mortgage no greater rights to the plaintiff than he himself had and, if, as we have concluded, Tucker had no right to re-move this building without the payment of the rents provided for in the second lease, he could convey no such right to the plaintiff. In the case of Hughes v. Kershow, 42 Colo. 210, 93 Pac. 1116, 15 L. R. A. (N. S.) 723, it is said by the Supreme Court of Colorado, in construing a lease which stipulated that any improvements erected upon the premises by the lease should belong to him, and that he might remove the same during the 60 days last preceding the expiration of the lease, provided he has paid all rents, taxes, and as-sessments agreed to be paid by him:

"It is not necessary, for the purposes of this case, to consider the sufficiency of a lien

thus created; for, assuming that this lien was valid and binding as between the parties, it could only extend to the interest held by Hughes in the property. And when, for any reason, this interest legally terminated, plain-tiff's lien thereon also terminated. Hence as above observed, if Hughes allowed the period fixed in the lease to expire without payment of rents, taxes, and assessments and removal of the structure from the lots, as therein provided, the building became a part of the realty; that is to say, the incho-ate right or claim of his lessors thereto ripened into complete ownership, and title vested in them. 'It is hardly necessary to add that the plaintiffs can claim no better title to the property in controversy than that which was vested in the tenant under whom they claimed as mortgagees. When the mort-gage was made, the building and machine were fixtures annexed to the realty of the defendant by his tenant, and which the de-fendant had then the inchoate right to claim as part of the freehold, if not reasonably dis-annexed before the term was ended. Talbot v. Whipple, 14 Allen [Mass.] 177.' "

The case last cited very nearly approaches the facts pleaded in the instant case. Ex-cept that the specific time of 60 days prior to the termination of the lease was fixed in that case for the removal of the building, it is on all fours with the case at bar. It was there-fore necessary for the plaintiff in pleading his case to allege facts not only showing the intention of the parties at the time the build-ing was erected that it should be the personal property of the tenant, but also that it still remained personal property at the time of the beginning of this action. It was also neces-sary for the pleader to state facts showing that all the conditions which prevented this building becoming a part of the realty to which it was affixed had been complied with, and that the plaintiffs were entitled to the possession thereof and entitled to remove it.

We do not think the petition sufficiently states such facts. It is not alleged anywhere in the petition that the rents accrued and ac-cruing under the terms of the lease under which Tucker held the lot had been paid or have been tendered to the defendant. The petition therefore fails to state facts which showed him to be entitled to the possession of the building. The demurrer should have been sustained as well as the objection to the introduction of evidence.

The trial court seems to have taken this view of the rights of the parties to this ac-tion also; for he instructed the jury to the ef-fect that, if they found for the plaintiff, it having been agreed that $1,800 was due and unpaid as rents upon said premises, their ver-dict should be for the difference between

$1,800 and the value of the property if they found that the value of the property exceeded $1,800, their verdict in no event to be for more than the amount sued for. It therefore seems that the trial court was of the opinion that the defendant was entitled to be paid the rents due him before the plaintiff could recover anything out of the value of the building. Since the defendant had no lien for his rents, this instruction must have been based upon the theory that payment of the rents was a condition precedent to the removal of the building.

It may be urged that this instruction cures the error committed by the trial court in refusing to sustain the defendant's demurrer. We do not think so. The instruction was given over the objection and exception of the defendant, and we think the defendant was prejudiced by being compelled to answer the petition of plaintiff and being adjudged by the court and jury to take the building and pay the plaintiff the value thereof found by the jury, less the amount agreed to be due him for rent. Had the proper procedure been followed in the instant case and had the rents to which the defendant was entitled been tendered him at the time demand was made for the building, the defendant could have elected to take his money and turn over the building to the plaintiff. Instead, he was, as the result showed, forced to either surrender the building and lose the rents to which he was entitled or contest this lawsuit and take the building at the value fixed by the jury. We therefore conclude that the trial court committed prejudicial error in overruling the demurrer of the defendant and in overruling the objection of the defendant to the introduction of evidence under the petition.

The judgment of the trial court should be reversed and this cause remanded, with instructions to the trial court to sustain the demurrer to the petition of the plaintiff.

By the Court: It is so ordered.