**HELVERING, Commissioner of Internal Revenue v. ATLAS LIFE INS. CO.**

**ATLAS LIFE INS. CO. v. HELVERING, Commissioner of Internal Revenue.**

Nos. 1199, 1200.

Circuit Court of Appeals, Tenth Circuit.

June 17, 1935.

Warren F. Wattles, Sp. Asst. to Atty. Gen. (Frank J. Wideman, Asst. Atty. Gen., and J. Louis Monarch and Edward H. Horton, Sp. Assts. to Atty. Gen., on the brief), for the United States.

Earl Whittier Shinn, of Washington, D. C. (H. B. McCawley and Patrick J. Hurley, both of Washington, D. C., on the brief), for Atlas Life Ins. Co.

Before PHILLIPS, McDERMOTT, and BRATTON, Circuit Judges.

PHILLIPS, Circuit Judge.

No. 1199.

It was held in Helvering **v.** Inter-Mountain Life Ins. Co., 294 U. S. 686, 55 S. Ct. 572, 79 L. Ed. 1227, that assets held by an insurance company against matured and unpaid coupons attached to nonparticipating policies do not constitute a reserve required by the law within the meaning of section 245 (a) (2) of the Revenue Act of 1921 (42 Stat. 261).

This requires a reversal in 1199 with instructions not to include assets held as reserves against matured and unpaid coupons attached to policies of life insurance issued by the insurance company, in computing "the mean of the reserve funds required by law" for the taxable years 1924, 1925, 1926, 1927, and 1930 for the purpose of

determining its deductions for such years under the Revenue Acts of 1924 and 1926, section 245 (a) (2), 43 Stat. 289, 44 Stat. 47 (26 USCA § 1004 (a) (2), and Revenue Act 1928, § 203 (a) (2), 45 Stat. 842, 843 (26 USCA § 2203 (a) (2).

## No. 1200.

The pertinent facts on this appeal as found by the board are these: The town of Tulsa, Indian Territory, acquired from the Creek Nation on May 25, 1906, block 137, town of Tulsa, pursuant to the provisions of the Act of March 1, 1901 (31 Stat. 861). On June 11, 1915, the city of Tulsa, successor to the town of Tulsa, conveyed to the board of education of Tulsa certain lands, including block 137. On April 1, 1921, the board of education entered into a lease with one Sinclair of a certain lot in block 137 for a term of ninety-nine years from October 1, 1921. On April 15, 1921, Sinclair, with the assent of the board of education, assigned the lease to the insurance company. The insurance company erected its home office building upon such lot.

The lease provided that the lessee should pay a rental of $7,200 a year during the first five years of the term; that at the end of that period and at the end of each succeeding ten years thereafter, the lot should be revalued and the reasonable rental fixed by three appraisers at approximately 6 per cent. of the fair market value of the lot, exclusively of the improvements.

It provided that the lessee should keep the "building and appurtenances" fully insured at its own expense during the term of the lease, that the lessor should have a first lien on any insurance indemnity that might accrue to the amount of all unpaid rental, and that the remainder should be applied to the reconstruction of the building.

It provided that, in the event of the failure of the lessee to keep or perform any covenant of the lease, the lessor might declare the lease terminated, and that the "buildings and improvements" situate on the lot should revert to the lessor as liquidated damages.

It provided for an independent appraisal, before the termination of the lease, of the actual cash value of all "buildings and improvements" situate on the lot, exclusively of the land; that the lessor should purchase the same at such value, paying one fourth in cash and the balance in one year; that at the termination of the lease the buildings on the lot should revert to the lessor, and the lessee should convey them to the lessor; and that if the value of the buildings and improvements should not be determined before the expiration of the lease, the lessee should have a lien upon them to the extent of the actual cash value thereof.

The insurance company occupied a part of the space in the building and rented the remaining space to others. In determining the income of the insurance company for the years 1924 to 1927, inclusive, and 1930, the commissioner and the board included the rentals received for such leased space.

The insurance company contends that to tax such rentals would impose a burden upon the board of education, an instrumentality of the state of Oklahoma, in the exercise of its governmental function, the maintenance of the public schools. It asserts, first, that title to the building passed, immediately upon its erection, to the board of education, and that therefore the tax is imposed upon income derived from property of a state agency; and, second, that to tax the income from the building hampers the board of education in making an advantageous lease of its land, and therefore imposes a burden upon the exercise by the board of education of its governmental function.

■■ Where the lessor and lessee expressly or impliedly so agree, structures placed on leased premises by a lessee remain the personal property of the lessee. Sweeney v. Medler (C. C. A. 10) 78 F.(2d) 148, decided May 13, 1935; New Chester Water Co. v. Holly Mfg. Co. (C. C. A. 3) 53 F. 19, 29; E. A. Kinsey Co. v. Heckermann (C. C. A. 6) 224 F. 308, 315, 316; Fairbanks v. Williams, 25 N. M. 74, 177 P. 745; Bridges v. Thomas, 8 Okl. 620, 58 P. 955; Welch v. Church, 55 Okl. 600, 155 P. 620; Shelton v. Jones, 66 Okl. 83, 167 P. 458, L. R. A. 1918A, 830; Kay County Gas Co. v. Bryant, 135 Okl. 135, 138, 276 P. 218.

Here the lease provided for the fixing of the rentals upon the basis of the appraised value of the land exclusively of the improvements, gave the lessor a lien upon any insurance that might accrue from damage to or destruction of the improvements, provided for the forfeiture of the improvements to the lessor for breach of covenant, for the payment by the lessor to the lessee of the value of the improvements, and the reversion and conveyance of the improve-

ments to the lessor at the termination of the lease. These provisions clearly imply an agreement that the improvements were to remain the personal property of the lessee until forfeiture for breach of covenant, or until the termination of the lease.

It follows that the tax is not imposed on income derived from property of the board of education.

The insurance company urges that the instant case is ruled by Gillespie v. Oklahoma, 257 U. S. 501, 42 S. Ct. 171, 66 L. Ed. 338, and Burnet v. Coronado O. & G. Co., 285 U. S. 393, 52 S. Ct. 443, 444, 76 L. Ed. 815. It seems to us there are important distinctions between those cases and the instant case.

Here the rental value is based upon the appraised value of the land and not upon the improvements; and the income claimed to be exempt is derived from the building, the property of the insurance company, and not from the land, the property of the board of education. In the Gillespie and Coronado Cases the income of the lessee, which was held immune from taxation, was derived directly from the thing leased. It was produced through the severance from the land of the oil therein. It resulted in a depletion of the oil in the land and a corresponding decrease in the value of the land. It was in substance a tax upon the land itself.

In the Coronado Case the court said:

"We are disposed to apply the doctrine of Gillespie v. Oklahoma strictly and only in circumstances closely analogous to those which it disclosed."

In Fox Film Corp. v. Doyal, 286 U. S. 123, 128, 52 S. Ct. 546, 547, 76 L. Ed. 1010, the court said:

"The principle of the immunity from state taxation of instrumentalities of the federal government, and of the corresponding immunity of state instrumentalities from federal taxation—essential to the maintenance of our dual system—has its inherent limitations. It is aimed at the protection of the operations of government (McCulloch v. Maryland, 4 Wheat. 316, 436, 4 L. Ed. 579), and the immunity does not extend 'to anything lying outside or beyond governmental functions and their exertion.' (Indian Motorcycle Co. v. United States, 283 U. S. 570, 576, 579, 51 S. Ct. 601, 603, 75 L. Ed. 1277). Where the immunity exists, it is absolute,. resting upon an 'entire absence of power' (Johnson v.

Maryland, 254 U. S. 51, 55, 56, 41 S. Ct. 16, 65 L. Ed. 126), but it does not exist 'where no direct burden is laid upon the governmental instrumentality, and there is only a remote, if any, influence upon the exercise of the functions of government.' (Willcuts v. Bunn, 282 U. S. 216, 225, 51 S. Ct. 125, 127, 75 L. Ed. 304 [71 A. L. R. 1260])."

It may be that to exempt income from a building erected under a long term lease upon state land from federal taxes would enable the state to exact a higher rental for such land, and that to subject such income to federal taxation would result in the state receiving less rental, but this would constitute a very remote and indirect burden upon the land, and a very indirect influence, if any, upon the exercise of a governmental function.

In two recent decisions, in each of which the facts were closely analogous to those in the instant case, it was held that such income was not immune from federal taxation. See Eckstein v. United States (Ct. Cl.) 10 F. Supp. 231, and Wanless Iron Co. v. Commissioner (C. C. A. 8) 75 F.(2d) 779.

We conclude the income derived by the insurance company from its sublessees is not immune from federal taxation.

The order of redetermination in 1200 is affirmed.