**Donald WHITE d/b/a Donjeri Corporation, Appellant,**

v.

**WEBBER–WORKMAN CO., a corporation, and W & W Investment Co., a corporation, Appellees.**

**No. 51418.**

Court of Appeals of Oklahoma, Division 2.

Feb. 6, 1979.

Released for Publication by Order of Court of Appeals March 1, 1979.

David A. Davis, Oklahoma City, for appellant.

Bennett Schlinke, Edmond, for appellees.

BRIGHTMIRE, Judge.

This action was brought by Donald White against defendant W & W Investment Co.[1] to recover the value of some car wash equipment plaintiff claims defendant converted. A summary judgment was rendered for defendant and plaintiff appeals, contending there exist unresolved issues of material fact requiring a trial.

The equipment in question was installed on land owned by defendant pursuant to the terms of a 1968 lease agreement between defendant as lessor and Alfred E. Pike and W. E. McLeod as lessees. Among other things, the lease provided that lessees could place improvements on the land and remove them at the termination of the lease if all conditions of the lease had been met. And, lessors were to have a lien on all improvements and equipment to secure payment of the $3,900 annual rent together with a right to take over the equipment upon paying off any unpaid equipment purchase money mortgages.

No rent was paid after November 1975, and this prompted lessor to file a lawsuit for possession and for a judgment for unpaid rent naming Don White as one of the defendants. Lessor was awarded both on July 19, 1976. White made no attempt to claim ownership of any of the property or in any other way challenge the investment company's right to possession in that lawsuit but, instead, filed this action about three weeks later.

1. Later merged into Webber-Workman Co.

## I

The tort of conversion is committed by one who wrongfully exercises temporary or permanent dominion over property owned by another. *Griffith v. McBride*, 188 Okl. 227, 108 P.2d 109 (1940); *Davidson v. First State Bank & Trust Co.*, Okl., 559 P.2d 1228 (1976). In terms of essential elements, one seeking damages for conversion must plead and prove (a) he owns or has a right to possess the property in question, (b) that defendant wrongfully interfered with such property right, and (c) the extent of his damages.

White based his action on a claim of ownership of the car wash equipment which, according to his petition, he said he bought "from Alfred E. Pike and others" on January 17, 1975. Interference with his ownership, said White, occurred at some undisclosed point in time when defendant wrongfully refused to allow plaintiff to enter on the premises for the purpose of removing the property valued at $80,000.

## II

The first thing to decide is whether plaintiff in fact had an ownership interest in the property, and then, if he did, whether defendants unlawfully interfered with it.

In his deposition, plaintiff testified he received a license to practice law in 1972 but spends most of his time managing various rental properties. He says he met Alfred Pike at the car wash and started talking about buying the facility. At that time, White said Pike showed him the lease. White read it and expressed his reaction in this way—"My assumption was that it was invalid." The basis for this, he said, was that he had heard that the property had "been sold twice" before and, though he was without any personal knowledge of the facts, he assumed that defendant had notice of the rumored sales. He did not check to determine whether any chattel mortgage or security interest existed of record, nor did he check with the lessors to see what, if any, interest they claimed in the property. Later on, White talked to Dick Webber— one of the officials of plaintiff—and told

him, he said, that he (White) owned the equipment and wanted to remove it. Webber replied that White did not own the property and told him he could not move it. White said he did not offer to show Webber any proof of ownership and acknowledged that there was some discussion as to how much prepayment of rent would have to be paid on the lease before defendant would agree to the removal of the equipment.

During his deposition White produced the following document as the foundation for his ownership:

### "Bill of Sale

"For value received we, the party of the first part, Willa Dayon Pike and Mike Pike, do hereby transfer to Donjeri Incorporated, the party of the second part, this seventeenth day of January, Nineteen Hundred and Seventy Five, for one dollar ($1.00) and other valuable considerations the following:

"2 summerage pumps with expensers, 2– 8,000 gallon tanks plus light fixtures, 10 horse vacum [*sic*], cashier booth, building, coilator, chain drive, friction wash, rocker brushes, rap [*sic*] around brushes, wheel washers, window brushes, 230 horse blowers, sigh air compressor and waxer flood lights, and chashier [*sic*] register.

"Said property located at 1008 North Pennsylvania.

"Party of the first part agrees to lease said property for three hundred and twenty five ($325.00) monthly for a period of four years with two five-year options.

s/Willa Dayon Pike
Willa Dayon Pike
s/Mike Pike
Mike Pike
s/A.E. Pike
s/Dorothy Pike"

White said he did not know what date the document was executed, but it was during February of 1976. Willa Dayon Pike and Mike Pike were children of A. E. and Dorothy Pike, White testified, and added that at the time the "bill of sale" was executed A.

E. Pike represented he owned none of the car wash property. White also said his wife typed the document and that a Massey Ferguson tractor worth about $1,000 plus $2,800 cash (in currency) was given for the equipment and that no receipt was obtained.

White said he ran the car wash for about three or four weeks during May or June of 1975 then left it without ever trying to operate it again because it was not worthwhile in that location. White admitted that he quit paying rent in November 1975—the last time he saw the equipment. And, although prior to November 1975 kids "kept vandalizing" the facility, White "assumed the equipment was still in operating condition" in August 1976 when he filed this lawsuit.

Finally, White admitted that he "never had a direct, oral agreement or written agreement with" defendant and that the only notice lessor had of his claim of ownership was that which may have resulted from receiving rent money from White for a while.

White's testimony, we are convinced, demonstrates he does not own the equipment in question. The so-called bill of sale he relies on recites that two people, who are strangers to the lease, are transferring the property installed on the leased premises and subleasing the premises, not to the plaintiff, Donald White, d/b/a Donjeri Corporation, but to "Donjeri Incorporated" a corporation in which White said he owns 50 shares and of which he is vice-president. Hence, White has admitted under oath that he has never owned the property in question nor has he ever had any right to its possession—an undisputed fact that destroys his cause of action and defeats his right to recover.

■ Secondly, even if White had "bought" the property, he concedes defendants own the land to which the equipment has been affixed both as structural improvements and as fixtures, and these, under the lease, could not have been validly transferred or subleased without the written consent of lessor—a consent White acknowledges was never given. And, although the lease grants lessees a right to remove the improvements at the termination of the lease, lessor has a lien on them to secure the rental payments. Admittedly, no rent was paid after November 1975, thus preventing lessees' contingent right of removal from ripening into an absolute one. Moreover, if White assumed the lease was invalid as he said he did, then he was faced with the potential application of the basic principle of law that, absent a valid agreement to the contrary, the landowner owns permanent improvements and fixtures a tenant affixes to the real estate. 60 O.S. 1971 § 334; *Shelton v. Jones*, 66 Okl. 83, 167 P. 458 (1917).

### III

Since the admissions of plaintiff established a material fact concerning an essential element of plaintiff's cause of action which defeats his right to recover—namely, that he neither owned the property nor had a right to possess it—the lawsuit was properly adjudicated summarily in defendant's favor. Dist.Ct. Rule 13, 12 O.S.1973 Supp., Ch. 2 App.

Affirmed.

NEPTUNE, J., concurs.

BACON, P. J., concurs in result.