SOUTHWEST ORTHOPAEDIC SPECIALISTS v. ALLISON



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:SOUTHWEST ORTHOPAEDIC SPECIALISTS v. ALLISON

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 SOUTHWEST ORTHOPAEDIC SPECIALISTS v. ALLISON
2018 OK CIV APP 69
Case Number: 116348
Decided: 10/30/2018
Mandate Issued: 11/28/2018
DIVISION II
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION II
Cite as: 2018 OK CIV APP 69, __ P.3d __

 

SOUTHWEST ORTHOPAEDIC SPECIALISTS, P.L.L.C., a domestic professional limited liability company, Plaintiff/Appellee,
v.
IRA WAYNE ALLISON, an individual; and ALLISON LEGAL, PLLC, a domestic professional limited liability company, Defendants/Appellants.

APPEAL FROM THE DISTRICT COURT OF
OKLAHOMA COUNTY, OKLAHOMA

HONORABLE PATRICIA G. PARRISH, TRIAL JUDGE

REVERSED AND REMANDED WITH INSTRUCTIONS

Riane T. Fern, M. Richard Mullins, Ronald T. Shinn, Jr., MCAFEE & TAFT, A PROFESSIONAL CORPORATION, Oklahoma City, Oklahoma for Plaintiff/Appellee

Gaylon C. Hayes, HAYES LEGAL GROUP, P.C., Oklahoma City, Oklahoma and
Mary P. Tate Westman, MARY WESTMAN LAW, Norman, Oklahoma for Defendants/Appellants

P. THOMAS THORNBRUGH, CHIEF JUDGE:

¶1 Ira Wayne Allison and Allison Legal, PLLC (collectively Allison), appeal the district court's denial in part of a motion to dismiss the lawsuit of Southwest Orthopaedic Specialists, P.L.L.C. (SOS), pursuant to the Oklahoma Citizens Participation Act, 12 O.S. Supp. 2014 §§ 1430 through 1440 (OCPA or the Act). On review, we find that SOS failed to make the prima facie showing of damages required by the Act and failed to show that the computers in question were subject to the jurisdiction of the federal Computer Fraud and Abuse Act (CFAA), 18 U.S.C. § 1030 (2008). We therefore reverse the decision of the district court and remand. Because this opinion clarifies a previously opaque point of law, however, we make our ruling on the need to bring evidence of damages prospective only, and remand this matter for a new OCPA hearing, at which SOS should be given the opportunity to demonstrate by "clear and specific evidence" the required damage element of its remaining claims.

BACKGROUND

¶2 Allison was employed by SOS in a legal/administrative capacity. This relationship ended in January 2017. Upon leaving, Allison kept two computers, a "Microsoft Surface" and an iPad ("the laptops"). In March, 2017, a rumor allegedly began circulating at SOS that an SOS employee had been contacted by the FBI, and that this contact had occurred because Allison had turned over files/data from the laptops to the U.S. Department of Justice. Allegedly, the data was turned over as part of a "False Claims Act" procedure or investigation.

¶3 On May 2, 2017, SOS sued Allison, alleging misappropriation of trade secrets, breach of contract, breach of fiduciary duty, conversion, and "computer fraud and abuse." SOS also sought a temporary and permanent restraining order preventing Allison from the use or manipulation of any files on the laptops, and granting access to, or the return of, the laptops. The court granted a temporary restraining order the next day. On May 15, 2017, Allison filed a motion to dismiss pursuant to the OCPA § 1432, arguing that SOS's suit was based on, related to, or was in response to Allison's "communication that is reasonably likely to encourage consideration or review of an issue by a legislative, executive, judicial or other governmental body or in another governmental or official proceeding."

¶4 The district court dismissed SOS's misappropriation of trade secrets claim pursuant to the Act, but allowed SOS's other claims to continue. Allison now appeals the district court's decision not to dismiss the remaining claims.

STANDARD OF REVIEW

¶5 There is currently no precedential standard of review for an OCPA case. In Krimbill v. Talarico, 2018 OK CIV APP 37, ¶ 4, 417 P.3d 1240 (cert. denied April 10, 2018; mandate issued May 9, 2018), this Court held:

It is clear that the OCPA provides a new summary process/dismissal procedure in certain cases, however, and that, traditionally, Oklahoma appellate courts have reviewed decisions pursuant to such procedures by a de novo standard. The OCPA also requires dismissal if a plaintiff fails to show a prima facie case, and is hence similar to a motion for directed verdict. Directed verdict challenges also are reviewed de novo. Finally, Texas, which has an almost identical act, has adopted a de novo standard of review. Hence, we find a de novo standard indicated by existing precedent and persuasive authority, and we adopt that standard here (footnote omitted).

We will apply this standard in the current case. "Issues of law are reviewable by a de novo standard. An appellate court claims for itself plenary, independent and non-deferential authority to re-examine a trial court's legal rulings." Neil Acquisition, L.L.C. v. Wingrod Inv. Corp., 1996 OK 125, n.1, 932 P.2d 1100.

ANALYSIS

I. THE OCPA

¶6 This case is one of a number of recent appeals involving the OCPA. The Legislature enacted the OCPA "to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of [persons] to file meritorious lawsuits for demonstrable injury." 12 O.S. Supp. 2014 § 1430. The OCPA is an example of "anti-SLAPP" (Strategic Lawsuit Against Public Participation) legislation, the purpose of which is to curb "lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." Cal. Civ. Proc. Code § 425.16(a). Anti-SLAPP legislation appears to be the result of an increasing tendency by parties with substantial resources to file meritless lawsuits against critics or opponents, with the intent of discouraging or silencing those critics by burdening them with the time, stress, and cost of a legal action. To carry out this purpose, anti-SLAPP acts typically provide an accelerated dismissal procedure, available immediately after a suit is filed, in order to weed out meritless suits early in the litigation process.

¶7 The OCPA contains several unusual procedures that have no precedent in Oklahoma law. In an OCPA proceeding, the initial burden is on the defendant seeking dismissal to show that the plaintiff's claim "is based on, relates to or is in response to the [defendant's] exercise of" (1) the right of free speech, (2) the right to petition, or (3) the right of association." 12 O.S. Supp. 2014 § 1434(B). The burden then shifts to the plaintiff to show, "by clear and specific evidence a prima facie case for each essential element of the claim in question." Id. § 1434(C). If § 1434(C) is satisfied, the Act states, the burden shifts back to the defendant to show "by a preponderance of the evidence" a defense to the plaintiff's claims. Id. § 1434(D).

¶8 This Court analyzed the Act in Krimbill v. Talarico, 2018 OK CIV APP 37, where we found that the legislative purpose of the OCPA is to weed out meritless suits while protecting "the rights of persons to file meritorious lawsuits for demonstrable injury." Id. ¶ 13 (quoting OCPA § 1430). At the same time, the Act states that it will not "abrogate or lessen any other defense, remedy, immunity or privilege available under other constitutional, statutory, case or common law or rule provisions." OCPA § 1440. Based on these restrictions, in Krimbill we found that the third stage of proceeding implied by the Act -- which appears to allow a defendant to obtain dismissal by showing a defense "by a preponderance of the evidence" per § 1434(D) -- is inconsistent with the restrictions of §§ 1430 and 1440. The law of Oklahoma has never provided for mandatory bench trials on the merits to be held pre-answer and pre-discovery. We held, therefore, that dismissal based on a defense may be obtained only if the defense is one of law, not one requiring the court to decide disputed facts. Krimbill at ¶ 32.

II. THE FIRST STAGE

¶9 The district court dismissed SOS's claim for misappropriation of trade secrets and left pending its claims for breach of contract, breach of fiduciary duty, conversion, and "computer fraud and abuse." We must examine each claim pursuant to the standards set out in the OCPA. The initial burden is on the defendant seeking dismissal to show that the plaintiff's claim "is based on, relates to, or is in response" to the defendant's exercise of the right of free speech, the right to petition, or the right of association. OCPA § 1434(B).

¶10 Pursuant to OCPA § 1431(3), "'Exercise of the right of free speech' means a communication made in connection with a matter of public concern." Section 1431(4)(c) also places "communication that is reasonably likely to encourage consideration or review of an issue by a legislative, executive, judicial or other governmental body or in another governmental or official proceeding" within the protections of the Act. The defendant must show that the action "is based on, relates to or is in response to" one of the forms of speech enumerated in § 1431, in order to invoke the protection of the Act. OCPA § 1432.

¶11 This "based on, relates to or is in response to" test is one of several OCPA requirements that are not defined. The plaintiff in such a case will normally have some legal rationale of at least minimal validity, and therefore will argue that the suit is one not "related" to speech as defined in § 1431 but instead is based on some other legitimate harm.[1] The second stage inquiry of the OCPA examines the legitimacy of the plaintiff's claims by requiring a prima facie showing of each element of the claimed cause(s) of action. OCPA § 1434(C). The existence of a legitimate rationale for suit is examined in the second stage, however, and is thus not a likely question in the first-stage inquiry. The first-stage inquiry is simply whether the defendant can make a plausible showing that the plaintiff's lawsuit was driven, at least in part, by one of the forms of speech enumerated in § 1431.

¶12 Texas courts, interpreting the substantially identical Texas Citizens Participation Act (TCPA), have reached a similar conclusion. In ExxonMobil Pipeline Co. v. Coleman, 512 S.W.3d 895, 900 (Tex. 2017), the Texas Supreme Court rejected the argument that a matter must involve constitutionally protected speech, or have more than a "tangential relationship" to speech protected by the TCPA before a defendant may invoke it. "[R]ather, TCPA applicability requires only that the defendant's statements are in connection with issue[s] related to health, safety, environmental, economic, and other identified matters of public concern chosen by the Legislature." Id. (internal quotation marks omitted). In Elite Auto Body LLC v. Autocraft Bodywerks, Inc., 520 S.W.3d 191, 201 (Tex. Ct. App. 2017)(reh'g denied May 25, 2017, review dismissed Jan. 19, 2018), the Texas Court indicated that the defendant has to show only that the "legal action" is within a "suspect class presumptively subject to dismissal" under the provisions of the TCPA. Elite Auto is clear that, although the TCPA protects "speech," the category of speech protected by the TCPA is considerably wider than the category of speech protected by the First Amendment. Id. at 204

¶13 The best current analogy to this procedure under the OCPA is, possibly, the burden shifting procedure used to screen claims under the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101 et. seq. In the first stage of an ADA proceeding, the employee establishes that he or she is a "disabled person" and has suffered an adverse action "relating" to that disability. In the second stage, the employer may present an alternate, non-discriminatory reason for its action. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817 (1973). In the third stage, the employee may attack the stated legitimate rationale as a pretext put forth to justify discrimination.

¶14 Similarly, in an OCPA proceeding, the defendant first establishes the possibility that he or she has been involved in one of the broad forms of speech protected by the Act, and that the plaintiff's lawsuit is somehow connected or related to that speech. In the second stage, the plaintiff must establish that a legitimate basis for suit -- other than suppression of the protected speech -- exists by showing a prima facie case. The question of whether this stated rationale is simply a pretext for attacking the defendant for his or her underlying speech, and whether the OCPA addresses this situation, is a more complex issue, and we need not address it here.

¶15 In this case, Allison's alleged conduct does appear to be "related" to the right of free speech or the right to petition as defined by the OCPA, particularly § 1431(4)(c), i.e., "a communication that is reasonably likely to encourage consideration or review of an issue by a legislative, executive, judicial or other governmental body or in another governmental or official proceeding," and Allison further makes a circumstantial case that SOS's suit was "in response" to such speech.[2] We therefore find that the first stage inquiry is satisfied, and the burden then shifted to SOS to show a prima facie case for each of its claims.

III. THE SECOND STAGE

A. Establishing a Prima Facie Case

¶16 In the second stage, SOS is required to show a prima facie case for each of its claims: breach of contract, breach of fiduciary duty, conversion, and "computer fraud and abuse." A party establishes a prima facie case by producing competent evidence to support each material element of its cause(s) of action. See Jackson v. Jones, 1995 OK 131, ¶ 4, 907 P.2d 1067.

¶17 SOS appears to have relied largely on its verified petition as supplying the evidence needed to establish its prima facie case.[3] The OCPA does appear to contemplate primary, although not exclusive, reliance on pleadings and affidavits as evidence. On the other hand, this same principle might allow the purpose of the OCPA to be obstructed simply by returning to code pleading and verifying the resulting petition. This would be inconsistent with the aims of the Act.

¶18 Texas courts, interpreting the earlier Texas act (the TCPA), which is practically identical to the OCPA, caution that "pleadings that might suffice in a case that does not implicate the TCPA may not be sufficient to satisfy the TCPA's 'clear and specific evidence' requirement." In re Lipsky, 460 S.W.3d 579, 590 (Tex. 2015). Additionally, "[b]are, baseless opinions do not create fact questions, and neither are they a sufficient substitute for the clear and specific evidence required to establish a prima facie case under the TCPA." Id. at 592.[4]

¶19 The latter standard appears appropriate. Something more fact-intensive than general allegations that the required elements exist should be necessary to show a prima facie case pursuant to the OCPA. Although the OCPA procedure is styled as a "motion to dismiss," the standard of evidence required is somewhat more specific than that required to resist a traditional motion to dismiss, in that something more than formulaic recitals of elements and a simple claim of damages is necessary. Pleadings that would be sufficient to withstand a traditional motion to dismiss will not always withstand a dismissal motion under the OCPA. Texas appears to have placed particular emphasis on the damages element, probably because this is an element that a plaintiff has the capability of proving and is a strong indicator of merit. See Section C below. We will analyze this case pursuant to the rules set out by the Texas Supreme Court in In re Lipsky.

B. SOS's Prima Facie Case

¶20 The elements of a breach of contract cause of action are (1) the formation of a contract; (2) breach of the contract; and (3) damages as a result of that breach. Cates v. Integris Health, Inc., 2018 OK 9, ¶ 11, 412 P.3d 98 (citing Dig. Design Grp., Inc. v. Info. Builders, Inc., 2001 OK 21, ¶ 33, 24 P.3d 834). To recover on a claim of breach of fiduciary duty, a plaintiff must prove "(1) the existence of a fiduciary relationship; (2) a breach of a fiduciary duty; and (3) the breach of a fiduciary duty was the direct cause of damages." Graves v. Johnson, 2015 OK CIV APP 81, ¶ 15, 359 P.3d 1151. The tort of conversion is committed by one who wrongfully exercises temporary or permanent dominion over property owned by another. Griffith v. McBride, 1940 OK 483, ¶ 0, 108 P.2d 109 (Court syllabus); Davidson v. First State Bank & Trust Co., 1976 OK 160, ¶ 10, 559 P.2d 1228. One seeking damages for conversion must plead and prove (1) he owns or has a right to possess the property in question; (2) the defendant wrongfully interfered with such property right; and (3) the extent of his damages. White v. Webber-Workman Co., 1979 OK CIV APP 6, ¶ 4, 591 P.2d 348.

C. Damages

¶21 SOS's pleadings and submissions establish a prime facie case of the initial elements of each of these claims. The weakness is in the final element -- the showing and extent of damages. Taking the operation of the substantially identical Texas act as a template, the need to show specific evidence of damages appears to be the most critical factor in OCPA proceedings

¶22 Because the existence of damages is a key determinant in a TCPA procedure, the Texas courts have adopted a relatively strict requirement for the showing of damages. "[A] plaintiff must provide enough detail to show the factual basis for its claim," including how the "defendants damaged the plaintiff." Lipsky, 460 S.W.3d at 591.[5] "Bare, baseless opinions do not create fact questions, and neither are they a sufficient substitute for the clear and specific evidence required to establish a prima facie case under the TCPA." Id. at 592. "Without more, allegations contained in an affidavit stating that a plaintiff suffered 'direct economic losses' and 'lost profits' are only conclusory and do not constitute evidence." Whisenhunt v. Lippincott, 474 S.W.3d 30, 45 (Tex. Ct. App. 2015)(concluding that plaintiff filed no affidavit or pleading that provided the detail required by the TCPA, as discussed in Lipsky, to show how defendants damaged him).

¶23 SOS's statements of damages regarding its first three claims are entirely generic, and clearly do not meet the specificity required by the Texas courts in interpreting the TCPA. The petition makes only the generic jurisdictional statement that SOS had been "damaged in excess of $75,000." It also raises the possibility that SOS "may be damaged in the future" because, if the data is released, such a release could violate HIPAA regulations. The court has, however, already enjoined such release. The rest of the pleadings do little or nothing to expand on the damages argument. SOS does not even explicitly state that the copies of documents taken by Allison are the only copies in existence or that SOS does not already have copies of the same documents. SOS appears to have assumed that evidence of breach acts as evidence of damage.

¶24 We appreciate that the OCPA is a new statute and that its Texas counterpart has required an extraordinary number of appellate decisions to define the exact requirements and processes for defending against a dismissal motion under the act.[6] It is difficult for any counsel to currently prepare for an OCPA proceeding because it presents an entirely new procedure for which there is little precedential guidance. That said, we find the Texas case law on this matter sound and that a showing of damage to the specificity required by In re Lipsky and Whisenhunt v. Lippincott is necessary.[7] SOS did not make such a showing and, hence, failed to make a prima facie case for its claims of breach of contract, breach of fiduciary duty, and conversion.

D. "Computer Fraud and Abuse"

¶25 SOS does appear to have sufficiently shown damages pursuant to the federal Computer Fraud and Abuse Act (CFAA), primarily because CFAA allows a plaintiff to count the cost of investigating a case of unauthorized access as a "loss" caused by the unauthorized access, which can be recompensed as damages. 18 U.S.C. § 1030(e)(11). SOS states that it was required to hire forensic computer investigators in this matter and that its costs exceed the $5,000 jurisdictional limit of the CFAA. 18 U.S.C. §1030(c)(4)(A)(i).

¶26 SOS bases its prima facie case for "computer fraud and abuse" on the case of LVRC Holdings LLC v. Brekka, 581 F.3d 1127 (9th Cir. 2009). The elements stated in LVRC Holdings are:

. . . to bring an action successfully under 18 U.S.C. § 1030(g) based on a violation of 18 U.S.C. § 1030(a)(2), LVRC must show that [defendant]: (1) intentionally accessed a computer, (2) without authorization or exceeding authorized access, and that he (3) thereby obtained information (4) from any protected computer (if the conduct involved an interstate or foreign communication), and that (5) there was loss to one or more persons during any one-year period aggregating at least $5,000 in value.

Id. at 1132. LVRC Holdings defines neither "protected computer" nor "unauthorized access." A precise definition of both terms is necessary because of the facts of this case.

1. Protected Computer

¶27 Pursuant to the CFAA, a "protected computer" is defined as a computer

[W]hich is used in or affecting interstate or foreign commerce or communication, including a computer located outside the United States that is used in a manner that affects interstate or foreign commerce or communication of the United States[.]

18 U.S.C. § 1030(e)(2)(B).

¶28 This statement appears to be more of an assertion of basis for federal jurisdiction, i.e., it defines when a computer is "protected by the CFAA" rather than defining when it is physically or electronically "protected from unauthorized access." Further interpretive case law on this issue is sparse. Simmonds Equip., LLC v. GGR Int'l, Inc., 126 F. SupP.3d 855, 863 (S.D. Tex. 2015), indicates that a computer is "protected" if it is connected to the internet at the time of access. Similar formulations are found in other courts, as shown by our discussion below of United States v. Trotter, 478 F.3d 918, 921 (8th Cir. 2007).

¶29 This detour into the workings of the CFAA is necessary because of the following facts:

1. Allison allegedly took two company laptops home at the end of his employment with SOS.

2. SOS alleges the data was accessed after Allison's employment terminated, and hence was unauthorized.[8]

¶30 The first element of unauthorized access is therefore demonstrated. Such access, however, occurred after Allison took the laptops home. The latter fact raises the second question: Did the laptops remain in use in interstate commerce after Allison took them home and ceased his employment? This question is forced upon us by the U.S. Congress's decision to use "commerce" as a basis to regulate computer access without providing a useable guideline as to when an individual computer is "used in or affecting interstate or foreign commerce or communication, including a computer located outside the United States that is used in a manner that affects interstate or foreign commerce or communication of the United States"

¶31 The Eighth Circuit is the highest court that has attempted to define when a computer is "involved in interstate commerce." United States v. Trotter, 478 F.3d 918, 921 (8th Cir. 2007), states:

[Defendant] admitted the computers were connected to the Internet. "The Internet is an international network of interconnected computers," Reno v. ACLU, 521 U.S. 844, 850, 117 S.Ct. 2329, 138 L.Ed.2d 874 (1997), and is comparable to "a sprawling mall offering goods and services." Id. at 853, 117 S.Ct. 2329. As both the means to engage in commerce and the method by which transactions occur, "the Internet is an instrumentality and channel of interstate commerce." United States v. MacEwan, 445 F.3d 237, 245 (3rd Cir.2006); see also United States v. Hornaday, 392 F.3d 1306, 1311 (11th Cir.2004) ("Congress clearly has the power to regulate the [I]nternet, as it does other instrumentalities and channels of interstate commerce . . . ."). With a connection to the Internet, the Salvation Army's computers were part of "a system that is inexorably intertwined with interstate commerce" and thus properly within the realm of Congress's Commerce Clause power. MacEwan, 445 F.3d at 245.

¶32 All of the cases in this passage, however, appear to involve computers that were actively connected to the Internet and actively in use in interstate commerce at the time of the unauthorized access.[9] We find no decision declaring a computer that was not actively in use on the Internet or otherwise engaged in interstate commerce proximate to the time of access to be subject to the CFAA. Indeed, to hold otherwise would be to recognize continuing federal jurisdiction over access to any computer that has at any time been connected to the Internet, or has at any time been used in interstate commerce.[10] This is too much weight for such a slender jurisdictional "hook" even given the often elastic use of the commerce clause as a basis for federal jurisdiction.

¶33 It is difficult to craft an exact line for when a computer is "used in or affecting interstate or foreign commerce or communication." The existing federal circuit court opinion indicates that a computer is inherently involved in interstate commerce when it is connected to the internet. Even accepting these broad claims of jurisdiction, however, the question of whether the CFAA regulates access to a computer that is not connected to the Internet at the time of access still appears undecided.

¶34 On the one hand, to concede continuing federal jurisdiction over any machine that has ever been connected to the Internet at any time offends the constitutionally limited nature of federal power. On the other hand, to allow the CFAA to be circumvented simply by disconnecting a machine from the Internet immediately before access, and re-connecting immediately afterwards, would undermine the purpose of the statute. We therefore hold that, for the CFAA to apply in this case, the computer must be actively used in interstate commerce reasonably proximate to the time of unauthorized access.

¶35 We find no evidence in the record before us that the two laptops in this case were connected to the Internet or were otherwise active in interstate commerce proximate to the time of the alleged unauthorized access. Hence, we find that SOS has failed to show that the involved laptops were subject to the CFAA.

¶36 A dismissal motion under the Oklahoma Citizens Participation Act is a new procedure that has no real analogue in any existing Oklahoma statute, and is not precisely defined in every element by the Act itself. As such, it presents something of a procedural minefield for practitioners until some uniform standards and procedures can be determined. The Act is functionally identical to its Texas counterpart, and we have relied on the gradual evolution of these standards within the Texas courts (some of which took place before the OCPA was adopted in Oklahoma) as persuasive in this case. To resist a motion to dismiss under the Act, a plaintiff must make a prima face showing of each required element of each claim. This showing, particularly on the issue of damages, is more detailed than that required to resist a traditional motion to dismiss.[11] "Without more, allegations contained in an affidavit stating that a plaintiff suffered 'direct economic losses' and 'lost profits' are only conclusory and do not constitute evidence." Whisenhunt v. Lippincott, 474 S.W.3d 30, 45 (Tex. Ct. App. 2015).

¶37 In this case, SOS relied largely on its verified pleadings, which provided only a jurisdictional statement of damages, and did not provide the detail required by the Texas cases we have cited. SOS's claim pursuant to the CFAA did provide the required detail as to damages, but did not show federal jurisdiction over the computer at the time of the alleged unauthorized action. We find that the district court was required to dismiss SOS's petition under these circumstances.

IV. DISMISSAL PURSUANT TO THE OCPA

¶38 The drafting of the Act raises a further question, however. OCPA § 1434 describes the required judicial remedy as "dismissal," without stating whether such dismissal is with or without prejudice, or possibly with leave to amend. Pursuant to § 2012(G), leave to amend should be given if a pleading fails to adequately state a claim and the defect can be corrected. The pleadings in this case were, however, adequate pursuant to the pleading code. An OCPA dismissal is based not on a failure to plead correctly, but on a failure to demonstrate a prima facie case. The failure is not, therefore, in the allegations of the pleadings, but in the evidence presented at hearing. Given that the pleading was not defective in the first instance, there is nothing to amend. Dismissal with leave to amend or without prejudice would likely be a grant of a second OCPA dismissal hearing after the plaintiff has failed at the first hearing.

¶39 Although the Texas Supreme Court has not made a definitive statement on the matter, Texas courts appear to regard a dismissal pursuant to the TCPA as a dismissal on the merits.[12] Texas courts have also published some 250 opinions mentioning the textually identical TCPA, but only four of those opinions appear to involve a dismissal without prejudice, and none do so in the context we have here.[13]

¶40 It should further be noted that the Legislature made the granting or denial of an OCPA motion immediately appealable. This is consistent with the decision being a final order. If not, a party dismissed without prejudice or with leave to amend would apparently have the choice of either appealing the trial court's decision, or simply filing a new case/petition and seeking a second decision at the trial court level. Such a procedure is both unprecedented and at odds with the concept that an OCPA decision is on the merits and immediately appealable.

¶41 We therefore find it reasonably clear that the Legislature intended a dismissal pursuant to the OCPA to be treated as a final order similar to a full summary judgment or directed verdict. That said, pursuant to Gomes v. Hameed, 2008 OK 3, n. 16, 184 P.3d 479:

Generally, when a newly announced rule of law appears obscure, prospective effect will be given to the pronouncement to protect those who would otherwise suffer from the law's abstruse or obscure contours. McDaneld v. Lynn Hickey Dodge, Inc., 1999 OK 30, ¶ 12, 979 P.2d 252, 257; Isbell v. State, Etc., 1979 OK 156, ¶ 1, 603 P.2d 758, 760-61 (Opala, J., concurring). Prospective application of a decision is not reserved solely for situations that deal with conflicting statutes nor with interpretation of a legislative ambiguity. It is equally commended to those situations where issues of first impression are not clearly foreshadowed by decisional law and where it serves to protect the public's reasonable expectation of reliance on prior judicial decisions. Harry R. Carlile Trust v. Cotton Petroleum Corp., 1986 OK 16, ¶¶ 19-22, 732 P.2d 438, 446-49.

¶42 The situation here clearly fits the parameters of Gomes. At the time the parties prepared for this hearing, it was not even established that a plaintiff was required to show a prima face case to avoid an OCPA dismissal. As this Court noted in Krimbill v. Talarico, 2018 OK CIV APP 37, ¶ 14, 417 P.3d 1240, the Act uses only the phrase "clear and specific evidence" to demonstrate the evidentiary burden, and that phrase had not previously appeared in published Oklahoma appellate case law. It was only by a process of deduction and reference to persuasive Texas case law that we determined in Krimbill that a showing of a prima facie case was required. Likewise, it is only by a considerable process of examination and reference to persuasive Texas case law that we have determined the need to bring specific evidence of damages.

¶43 The operation of the OCPA in the area was clearly obscure, and, pursuant to Gomes, "prospective effect will be given to our pronouncement to protect those who would otherwise suffer from the law's abstruse or obscure contours."

CONCLUSION

¶44 We find that SOS could not bring a claim pursuant to the federal Computer Fraud and Abuse Act (CFAA) because there was no proximate nexus between the access and the computer's use in interstate commerce. That claim is dismissed. We find that SOS did not make a showing of damages sufficient to establish a prima facie case for its claims of breach of contract, breach of fiduciary duty, and conversion. However, because this point of law was obscure in the drafting of the Act, we give prospective effect to this requirement and remand this matter to the district court with instructions to hold a second OCPA hearing addressing SOS's claims of breach of contract, breach of fiduciary duty, and conversion.

¶45 REVERSED AND REMANDED WITH INSTRUCTIONS.

WISEMAN, P.J., and FISCHER, J., concur.

FOOTNOTES

[1] For example, the question of whether a breach of contract suit is truly brought because of a minimal breach of contractual rights or is brought with the broader purpose of using the litigation to punish or silence a defendant from exercising protected speech rights, appears to be individual to each suit, and implies substantial discretion on the part of the district court.

[2] Allison alleges that SOS did not take any action when Allison failed to surrender the laptops at the conclusion of his employment, and took action when rumors started to surface that a federal agency may have obtained data on the laptops from Allison as part of a FCA investigation.

[3] Although the matter has not been widely discussed, existing case law indicates that a verified petition is considered to be the equivalent of evidence and testimony. See e.g., Kennedy v. Builders Warehouse, Inc., 2009 OK CIV APP 32, ¶ 14, 208 P.3d 474; Beard v. Love, 2007 OK CIV APP 118, ¶ 13, 173 P.3d 796; Roberson v. Jeffrey M. Waltner, M.D., Inc., 2005 OK CIV APP 15, ¶ 8, 108 P.3d 567.

[4] SOS cites extensively to California case law in this matter, but the Texas TCPA is almost identical to the OCPA, and the California act is not. California appears to apply more of a traditional "motion to dismiss" standard, taking the facts stated in the pleadings "as true" without any heightened requirement. Texas requires a more particularized showing of facts.

[5] This is consistent with the OCPA intent to "protect the rights of a person to file meritorious lawsuits for demonstrable injury." OCPA § 1430 (emphasis added).

[6] Indeed, this process is ongoing. Texas courts have published some 33 appellate opinions regarding the TCPA in the first six months of 2018. This activity is occurring some seven years after the TCPA was first enacted. In total, Texas courts have published over 200 decisions involving the TCPA. It is evident that the full reach and procedure of the Texas Act is not yet fully settled. Oklahoma's Act is fundamentally identical, and may require the same degree of scrutiny before its operation is routinely understood.

[7] The statement of damages deemed insufficient in Lipsky was that "Lipsky's statements caused Range to suffer 'direct pecuniary and economic losses and costs, lost profits, loss of its reputation, and loss of goodwill in the communities in which it operates . . . in excess of three million dollars.'" The Court held:

We accordingly disagree with the court of appeals that general averments of direct economic losses and lost profits, without more, satisfy the minimum requirements of the TCPA. Although the affidavit states that Range "suffered direct pecuniary and economic losses," it is devoid of any specific facts illustrating how Lipsky's alleged remarks about Range's activities actually caused such losses.

In re Lipsky, 460 S.W. 3d at 593.

[8] The federal courts have split over what is included in the scope of "unauthorized access." The Fourth and the Ninth Circuits interpret the statutory text to mean what it says, i.e., access is unauthorized if it occurs at a time when the accessor is not allowed such a privilege but the CFAA does not cover any subsequent "unauthorized use" of the information once it is obtained. The First, Fifth, Seventh, and Eleventh Circuits, however, follow "retroactive de-authorization" logic, holding that subsequent unauthorized use of data renders the initial access "unauthorized" even if it was authorized at the time it occurred. See Teva Pharm. USA, Inc. v. Sandhu, 291 F. SupP.3d 659, 668-671 (E.D. Pa. 2018), for a discussion these approaches.

[9] See also Cont'l Grp., Inc. v. KW Prop. Mgmt., LLC, 622 F. SupP.2d 1357, 1370 (S.D. Fla. 2009)(holding, "A connection to the internet is 'affecting interstate commerce or communication.'"); Becker v. Toca, No. 07--7202, 2008 WL 4443050, at *5 (E.D.La. Sept. 26, 2008) (computer was connected to Internet and used in law firm business); Nordstrom Consulting, Inc. v. M & S Tech., Inc., No. 06 C 3234, 2008 WL 623660, at *12 (N.D.Ill. March 4, 2008) *776 (computers used in day-to-day business which included selling products across state lines); Modis, Inc. v. Bardelli, 531 F.Supp.2d 314, 318--19 (D.Conn.2008) (computer was used in plaintiff's business and plaintiff had offices in two different states).

[10] Given the American source of most major operating systems, and the practice of frequently updating these systems "online," the vast majority of computers in the world are, at all times, under federal jurisdiction and subject to the CFAA pursuant to this definition.

[11] A recent Texas case indicated that the quantum and form of proof required to demonstrate a case under the TCPA are closer (but not quite as great) as that required in summary judgment cases: "While we are not inclined to apply wholesale the summary judgment affidavit cases here, we are confident that the 'clear and specific' standard in the TCPA at least requires us to reject conclusory claims made by an affiant." MVS Int'l Corp. v. Int'l Advert. Sols., LLC, 545 S.W. 3d 180, 192 (Tex. Ct. App. 2017).

[12] See Better Bus. Bureau of Metro. Hous., Inc. v. John Moore Servs., Inc., 500 S.W.3d 26, 40 (Tex. Ct. App. 2016)( "A dismissal with prejudice under the TCPA constitutes a final determination on the merits for res judicata purposes"); Holcomb v. Waller Cty., 546 S.W.3d 833, 841 (Tex. Ct. App. 2018)( A motion to dismiss under the TCPA tests the potential merits of claims implicating free-expression rights at the outset of a suit); Diogu Kalu Diogu II, Appellant v. Yaowapa Ratana Aporn, Appellee, 01-17-00392-CV, 2018 WL 3233596, at *4 (Tex. Ct. App. July 3, 2018) (stating that dismissal under the TCPA "constitutes a final determination on the merits").

[13] Three of these cases, Abatecola v. 2 Savages Concrete Pumping, LLC, No. 14-17-00678-CV, 2018 WL 3118601, at *2 (Tex. Ct. App. June 26, 2018); Duchouquette v. Prestigious Pets, LLC, No. 05-16-01163-CV, 2017 WL 5109341, at *2 (Tex. Ct. App. Nov. 6, 2017); and Breitling Oil & Gas Corp. v. Petroleum Newspapers of Alaska, LLC, No. 05-14-00299-CV, 2015 WL 1519667, at *1 (Tex. Ct. App. Apr. 1, 2015) involve plaintiffs' attempts to avoid a TCPA decision by dismissing their own suit without prejudice before the court could rule on the TCPA motion. The fourth case, James v. Calkins, 446 S.W.3d 135, 142 (Tex. Ct. App. 2014), involved an attempt to divest the appellate court of jurisdiction by dismissing two appealing parties from the suit without prejudice.






 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Civil Appeals Cases
 Cite
Name
Level

 2005 OK CIV APP 15, 108 P.3d 567, ROBERSON v. JEFFREY M. WALTNER, M.D., INC.
Discussed
 2007 OK CIV APP 118, 173 P.3d 796, BEARD v. LOVE
Discussed
 2009 OK CIV APP 32, 208 P.3d 474, KENNEDY v. BUILDERS WAREHOUSE, INC.
Discussed
 2015 OK CIV APP 81, 359 P.3d 1151, GRAVES v. JOHNSON
Discussed
 1979 OK CIV APP 6, 591 P.2d 348, WHITE v. WEBBER-WORKMAN CO.
Discussed
 2018 OK CIV APP 37, 417 P.3d 1240, KRIMBILL v. TALARICO
Discussed at Length
Oklahoma Supreme Court Cases
 Cite
Name
Level

 1940 OK 483, 108 P.2d 109, 188 Okla. 227, GRIFFITH v. MCBRIDE
Discussed
 2001 OK 21, 24 P.3d 834, 72 OBJ 640, DIGITAL DESIGN GROUP, INC. v. INFORMATION BUILDERS
Discussed
 1995 OK 131, 907 P.2d 1067, 66 OBJ 3765, Jackson v. Jones
Discussed
 2008 OK 3, 184 P.3d 479, GOMES v. HAMEED
Discussed
 1996 OK 125, 932 P.2d 1100, 67 OBJ 3566, Neil Acquisition, L.L.C. v. Wingrod Investment Corp.
Discussed
 1976 OK 160, 559 P.2d 1228, DAVIDSON v. FIRST STATE BANK & TRUST CO., YALE
Discussed
 1979 OK 156, 603 P.2d 758, ISBELL v. STATE, ETC.
Discussed
 2018 OK 9, 412 P.3d 98, CATES v. INTEGRIS HEALTH, INC.
Discussed
 1999 OK 30, 979 P.2d 252, 70 OBJ 1215, McDaneld v. Lynn Hickey Dodge, Inc.
Discussed
 1986 OK 16, 732 P.2d 438, 57 OBJ 998, Harry R. Carlile Trust v. Cotton Petroleum Corp.
Discussed
Title 12. Civil Procedure
 Cite
Name
Level

 12 O.S. 1430, Title - Purpose
Discussed
 12 O.S. 1434, Ruling on a Motion to Dismiss - Standard of Proof
Cited


 
 








 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA